UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:23-CV-130-JHM

**JOHN PAUL KORIA, J.R.**                                                                             **PLAINTIFF**

v.

**BOBBI JO BUTTS,** *et al.*                                                                         **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion for summary judgment filed by Defendants Bobbi Jo Butts, Christina Hatton, Beth Sparks (f/k/a Beth Roberts), and Debbie Grimes (collectively, Defendants). (DN 42). Plaintiff John Paul Koria, J.R. filed a response to the motion (DN 45), and Defendants filed a reply. (DN 46). Plaintiff has also filed a sur-reply (DN 47), which the Court has considered. For the following reasons, the motion for summary judgment will be granted.

**I.**

Plaintiff was a convicted inmate incarcerated at the Western Kentucky Correctional Complex (WKCC) at the time pertinent to this action. Plaintiff, proceeding *pro se*, commenced this 42 U.S.C. § 1983 action against WKCC Warden Bobbi Jo Butts; Deputy Warden of Programs Christina Hatton; and Unit Administrators Beth Sparks and Debbie Grimes alleging retaliation in violation of his First Amendment rights. (DNs 1 and 9).

Plaintiff's complaint alleges that on August 2, 2023, he filed a grievance "on WKCC Business dept for withholding a $1846.00 Government check" he received from the Internal Revenue Service (IRS). (DN 1, PageID.4). Twenty minutes after Plaintiff filed the grievance, Defendant Grimes called him to her office "to try and persuade me into not following through with said grievance to no avail." (*Id*.). Plaintiff asserts that "when staff realized I had a legitimate

claim, I was shipped to EKCC [Eastern Kentucky Correctional Complex] as retaliation for said grievance . . . ." (*Id*.).

Plaintiff alleges that he has had multiple altercations with inmates and a "documented history of having been assaulted, extorted and exploited by gang members[.]" (*Id*.). He states that WKCC has a "known propensity" to retaliate against inmates who are in need of protective measures by sending them to places "where they are [guaranteed] to be assaulted or extorted." (*Id*.). Plaintiff alleges, "[i]t is a known fact that EKCC & [Kentucky State Penitentiary] have the largest and most aggressive gang population anywhere in the state & staff knowing I'm a former gang member going to a place of such nature and would be assaulted was . . . retaliation for seeking redress of grievances." (*Id*., PageID.5).

Plaintiff states that he filed his grievance on August 2, 2023, and that he was transferred on August 4, 2023. He reiterates that Defendants Butts, Hatton, Sparks, and Grimes violated his constitutional rights "by retaliating against me and shipping me to a place I would most likely be assaulted & hurt . . . for seeking redress of grievances . . . ." (*Id*., PageID.5-6).

Upon initial review pursuant to 28 U.S.C. § 1915A, the Court allowed Plaintiff's First Amendment retaliation claim to proceed for further development against Defendants in their individual capacities. (DN 11).

## II.

### A.

Defendants now move for summary judgment on grounds that: (1) Plaintiff did not exhaust his administrative remedies; (2) he fails to establish the requisite elements of his First Amendment retaliation claim; (3) Defendant Butts cannot be found liable under a theory of *respondeat*

*superior*; and (4) Defendant Grimes cannot be found liable because she was not personally involved in the alleged wrongdoing. (DN 42-1, PageID.178-188).

In support of their motion, Defendants submit the following evidence: Kentucky Department of Corrections (KDOC) transfer memorandum dated August 3, 2023; KDOC staff e-mail correspondence regarding proposed inmate transfers between WKCC and EKCC for August 4, 2023; Plaintiff's Transfer Authorization Form; KDOC policies pertaining to transfers, classification of inmates, and inmate grievance procedures; sworn affidavits by KDOC Corrections Program Administrators Amanda Scott and Alan Long; and sworn affidavits by Defendants Butts, Hatton, Sparks, and Grimes. (DNs 42-2 to 42-11).

**B.**

In Plaintiff's response to the motion for summary judgment, he argues that he exhausted his administrative remedies and that he presents evidence sufficient to raise a genuine dispute as to his retaliation claim. (DN 45, PageID.274-278). As evidence, Plaintiff attaches a sworn affidavit; letter correspondence to and from various KDOC officials relating to his transfer and other issues; inmate grievances dated August 2, 2023, and August 8, 2023; printouts of his bi-annual reclassification and bed assignments; and two Transfer Authorization Forms. (DN 45, PageID.281-313).

**C.**

In their reply, Defendants restate that Plaintiff has not exhausted his administrative remedies, that his retaliation claim lacks temporal proximity, and that he had no active inmate conflicts at EKCC when he was transferred. (DN 46, PageID.314-315). Attached thereto is the sworn affidavit of William Mullins, Unit Administrator at EKCC. (DN 46-1).

**III.**

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324).  The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56.  "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted).

## IV.

### A.

The following facts are undisputed.

At the time of the complained-of events, Defendants were employees of WKCC: Butts and Hatton served as Warden and Deputy Warden, respectively, while Sparks and Grimes were employed as Unit Administrators. Defendant Grimes also served as WKCC's grievance coordinator. (DNs 42-7; 42-8; 42-10; 42-11).

On August 2, 2023, while incarcerated at WKCC, Plaintiff filed a grievance stating that an IRS stimulus check in the amount of $1,842.25 had been mailed to him on June 26, 2023, but it was being improperly withheld by the WKCC business department. (DN 1, PageID.4; DN 1-1, PageID.12-15).

On August 1, 2023, an institutional transfer moving Plaintiff from WKCC to EKCC was initiated and approved by Classification and Treatment Officer Jaime Ortiz. (DN 42-2, PageID.197-198). The transfer was next approved by Unit Administrator Sasha Primovich on the same date. (*Id.*) The following day, on August 2, 2023, Defendant Sparks provided the third approval. (*Id.*). Amanda Scott of the KDOC Classification Branch, provided the fourth and final level of approval on August 2, 2023. (*Id.*). Plaintiff was transferred from WKCC to EKCC on August 4, 2023. (DN 1, PageID.5; DN 42-2; DN 45-14).

Following his transfer to EKCC, Plaintiff was placed into the Restricted Housing Unit (RHU) for approximately one month while officials investigated Plaintiff's security concerns. (DN 45, PageID.282, 284; DN 45-8; DN 46-1).

**B.**

Defendants seek summary judgment on Plaintiff's retaliation claim against them on the basis that he failed to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). (DN 42-1, PageID.178-180).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court, interpreting § 1997e, has expressly stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Failure to exhaust administrative remedies under the PLRA is an affirmative defense for which defendants bear the burden of proof. *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012). Accordingly, summary judgment may be granted "'only if defendants establish the absence of a "genuine dispute as to any material fact" regarding non-exhaustion.'" *Id.* at 456 (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)). Because defendants also bear the burden of persuasion for this issue at trial, their "initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Id.* at 455–56 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)).

To meet the exhaustion requirement, an inmate must "properly exhaust" his remedies, which requires strict compliance with the grievance process provided by the prison. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006). "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative

system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. "'To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Woodford*, 548 U.S. at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

Defendants aver that Plaintiff's claim is unexhausted because he failed to appeal his transfer in accordance with CPP 18.1, the KDOC policy that governs the classification process. (DN 42-1, PageID.178). CPP 18.1, "Classification of the Inmate," provides, in pertinent part:

> M.  Appeals
>
>   1.  An inmate may appeal any classification action to the Warden or his designee within five (5) working days of the action. The Warden or his designee shall respond in writing to an appeal of a classification action within fifteen (15) working days of receipt of the appeal. . . .
>
>   2.  If the inmate is not satisfied with the response received from the Warden or his designee, the inmate may request in writing to the Director of Population Management or designee that his case be reviewed. This request shall be submitted within five (5) working days of receipt of the Warden's response. The Director of Population Management shall respond in writing within fifteen (15) working days of receipt of the request for review . . . .

(DN 42-5, PageID.234).

Defendants explain that under the KDOC Inmate Grievance Procedure (CPP 14.6), a "[c]lassification decision or appeal of a classification decision including transfer denial,

7

recommendation, or approval" is a "non-grievable issue" (DN 42-3, PageID.201). Therefore, for Plaintiff to properly exhaust his administrative remedies, he was required to appeal the issue utilizing the avenue set forth above, instead of through the grievance process. (DN 42-1, PageID.179).

Defendants submit the affidavit of Amanda Scott, Corrections Program Administrator in the office of Adult Institutions Classifications Branch for KDOC at the Central Office in Frankfort, Kentucky. (DN 42-4). Scott attests that as Corrections Program Administrator, she conducts the final level of review of proposed transfers for the KDOC, and also reviews the second/final level of classification appeals made by inmates regarding transfers. (*Id.*). She states that CPP 18.1(II)(M) provides the appeal procedure for classification actions (including transfers between institutions), and that, following initial review by the Warden, "[c]lassification appeals that inmates pursue to the second level of review are forwarded to [her] office." (*Id.*). Scott states that her office has no record of Plaintiff appealing his transfer from WKCC to EKCC in August of 2023. (*Id.*).

Plaintiff responds that he "appealed his transfer to both Warden David Green (EKCC) as well as Central Office Classification Staff . . . . Therefore showing adequate exhaustion . . . satisfying PLRA . . . ." (DN 45, PageID.275). Plaintiff avers that CPP 18.1 does not explain how an appeal "should be formatted or worded," therefore his correspondence to Warden Green (DNs 45-2 and 45-3) and to Central Office Classification Staff (DN 45-1), articulating his concerns pertaining to his transfer should fulfill the PLRA exhaustion requirement. (DN 47).

In support of Plaintiff's argument that he has constructively exhausted administrative remedies, he produces a letter addressed to Warden James Green at EKCC dated August 9, 2023, stating that he was transferred to EKCC in retaliation for filing a grievance at WKCC, and

requesting a transfer from EKCC on the basis that he had a "documented conflict" with at least one other inmate at that facility. (DN 45-3). Plaintiff provides a second letter addressed to Warden Green dated August 14, 2023, in which he requested that a conflict with another inmate be reinstated for his protection and that a transfer be initiated due to issues with said inmate. (DN 45-2). Warden Green's response, dated August 21, 2023, indicates that Plaintiff had previously signed a conflict resolution form, that there was no new evidence to support reinstatement of the conflict, and that there were no administrative factors preventing Plaintiff from residing on the yard at EKCC. (*Id*.).

Plaintiff also references a letter sent to the KDOC Classification Branch, dated August 23, 2023, in which he asserted that his transfer from WKCC was retaliatory and requested a transfer out of EKCC due to safety and security concerns. (DN 45-1). A response by Alan Long dated August 30, 2023, advised Plaintiff to contact institutional staff to request Protective Custody in regards to his personal safety concerns. (*Id*.).

Finally, Plaintiff submits a letter dated September 15, 2023, from KDOC Ombudsman Allyson Lambert, addressing Plaintiff's concerns about his grievance and stimulus check concerns at WKCC, and the purported conflicts at EKCC. (DN 45-4).

The record therefore reflects that, following Warden Green's August 21, 2023, response to Plaintiff's August 9 and August 14, 2023 letters, Plaintiff sent a letter to the Classification Branch on August 23, 2023, reiterating his claim of retaliatory transfer and safety concerns at EKCC. KDOC Corrections Program Administrator Alan Long responded to Plaintiff's letter on August 30, 2023, advising Plaintiff to contact institutional staff for concerns of personal safety, and that "transfer requests must originate at the institutional level." (DN 45-1). Long's affidavit, submitted by Defendants, states that he is assigned to review classification appeals and that his office "has

9

no record of [Plaintiff] filing a classification appeal about his transfer from Western Kentucky Correctional Complex to Eastern Kentucky Correctional Complex in August 2023," but it does not address Plaintiff's correspondence to the Classification Branch or Long's response thereto. (DN 42-6). Defendants acknowledge that Plaintiff sent said correspondence to the Central Office, *i.e.*, the office responsible for handling the second level of reviews for classification appeals. However, they maintain that Plaintiff's claim is unexhausted because "what [Plaintiff] wrote did not mention an 'appeal.'" (DN 46, PageID.314).

"A prisoner's lack of compliance may be excused if the administrative remedies are not available, but this court has required a prisoner to make 'affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable.'" *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015) (quoting *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 223 (6th Cir. 2011), other quotations and citation omitted). "When a prisoner makes affirmative efforts to comply but does not succeed, we analyze "whether those 'efforts to exhaust were sufficient under the circumstances.'" *Id.* (quoting *Risher*, 639 F.3d at 240, other quotations omitted). The Sixth Circuit does not "require[e] that a prisoner utilize every conceivable channel to grieve their case, but even when a policy is vague, a prisoner must do what *is* required by the grievance policy." *Napier*, 636 F.3d at 224.

In this regard, Plaintiff's argument that CPP 18.1(II)(M) does not explicitly set forth the requisite verbiage or format of a classification appeal is well-taken. Construing Plaintiff's submissions liberally, as the Court must do, the contents of Plaintiff's letters to Warden Green and the Classification Branch could be read, in substance, as appealing the transfer determination insofar as he: (1) challenged the allegedly retaliatory basis for the transfer into EKCC; (2) set forth his safety and security concerns at EKCC regarding an inmate conflict and gang activity; and

(3) requested that he be transferred out of EKCC. The Court observes that CPP 18.1 outlines only to whom the appeal is to be addressed and the relevant timelines for each step, but makes no mention of the required form or content.[1] Notably, Plaintiff appears to have sent his correspondence to the appropriate contacts and within the proper timeframes in accordance with CPP 18.1. Thus, viewing the factual evidence and drawing all reasonable inferences in favor of the Plaintiff, the Court concludes that an issue of fact exists concerning whether Plaintiff's administrative remedies were exhausted. *See Poe v. Ogemaw Cnty.*, No. 19-10008, 2020 WL 1041221, at *5-6 (E.D. Mich. Mar. 4, 2020) (finding plaintiff's affirmative efforts to comply with facility's institutional grievance policy "sufficient under the circumstances" to exhaust; though plaintiff failed to use certain language in his complaints, the jail's policy did not mandate a certain procedure or foreclose alternative means of filing a grievance); *Hugueley v. Parker*, No. 3:19-CV-00598, 2020 WL 4753845, at *7-8 (M.D. Tenn. Aug. 17, 2020) (finding genuine dispute as to whether administrative remedies were unavailable and rejecting defendants' argument that plaintiff's improper labeling of his grievance prevented it from constituting exhaustion for his claims).

Under these circumstances, a juror could find that Plaintiff's appeal attempts gave prison officials a fair opportunity to resolve the matter internally, which is the purpose underlying the exhaustion requirement. *See Woodford*, 548 U.S. at 94. However, as discussed below, Defendants are entitled to summary judgment because Plaintiff fails to raise a genuine dispute as to the requisite elements of his claim of retaliation.

---

[1] By way of comparison, CPP 14.6, submitted as evidence by Defendants, details the appropriate procedural steps of the Inmate Grievance Process. CPP 14.6(II) (J)(2)(k), for example, provides that an inmate may appeal an unfavorable Step 2 determination by appealing the grievance to the Warden, and directs that "the grievant shall use the appeal form provided" and the grievance appeal "shall be limited to one (1) page and state a basis for the appeal." (DN 42-3).

## C.

Defendants next argue that they are entitled to summary judgment on the basis that Plaintiff fails to establish the requisite elements to state a retaliation claim under the First Amendment. (DN 42-1, PageID.180-186).

Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. As set forth by the Sixth Circuit in *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*):

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X*, 175 F.3d at 394. In a claim for retaliation, "[t]he plaintiff has the burden of proof on all three elements." *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003). If the plaintiff establishes "'his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant,' who may prevail on summary judgment by showing that 'he would have taken the same action in the absence of the protected activity.'" *Vaughn v. Underwood*, No. 3:20-CV-P317-RGJ, 2022 WL 4693908, at *2 (W.D. Ky. Sept. 30, 2022) (quoting *Thaddeus-X*, 175 F.3d at 399).

Defendants concede that Plaintiff engaged in protected conduct by filing a grievance against prison officials,[2] however, they maintain that they are entitled to summary judgment because Plaintiff's claim fails on the second and third elements of the retaliation analysis. The Court agrees.

---

[2] *See Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018) ("An inmate has a right to file 'non-frivolous' grievances against prison officials on his own behalf, whether written or oral.") (citation omitted).

12

*Adverse Action*

Defendants argue that Plaintiff's transfer "was not an adverse action because he did not have any documented conflicts that would have made his transfer to EKCC improper." (DN 42-1, PageID.185).

"Even though a prisoner has no inherent constitutional right to avoid segregated housing or prison transfers, [a prison] may not place the prisoner in segregated housing or transfer him to another prison as a means of retaliating against him for exercising his First Amendment rights." *Hill v. Lappin*, 630 F.3d 468, 473 (6th Cir. 2010). Plaintiff must therefore show that "an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct." *Thaddeus-X*, 175 F.3d at 394. Courts have held that, "[a]s a general matter, a prison official's decision to transfer a prisoner from the general population of one prison to the general population of another is not considered adverse." *LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013); *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005) ("Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct."). An exception lies where foreseeable, negative consequences inextricably follow from the transfer, such as loss of access to the courts. *Siggers-El*, 412 F.3d at 701–02. Thus, to survive summary judgment on a retaliatory transfer claim, a prisoner must demonstrate that he has an "exceptional case" in which foreseeable, negative consequences inextricably follow from the transfer. *Jones v. Caruso*, 421 F. App'x 550, 553 (6th Cir. 2011) (citing *Siggers–El*, 412 F.3d at 701–02).

Defendants cite to the sworn affidavits of Defendants Butts, Hatton, and Sparks, and non-party Amanda Scott showing that inmate transfers undergo a four-step process of review and

authorization, during which jail officials check for active documented conflicts with other inmates. That review process, at all four steps, revealed that Plaintiff had no active, documented inmate conflicts that would have prevented him from being transferred to EKCC. (DNs 42-4; 42-7; 42-8; 42-10). Defendants also submit Plaintiff's Transfer Authorization Form, containing four approval signatures and indicating "no separation conflicts. Two conflicts have been resolved and placed in Scan Documents." (DN 42-2).

Plaintiff claims that his transfer to EKCC was adverse in nature because he had a conflict with Terry Harding, an inmate at EKCC, and a history of being exploited by gang members. (DN 45, PageID.282). He states that "EKCC and [Kentucky State Penitentiary] have the worst violent gang population's in the State of Kentucky," which "shows that WKCC's staffs intentions were retaliatory in nature . . . ." (*Id*.). Plaintiff asserts that, upon arrival to EKCC, he was placed in segregation "under investigation for over a month for concerns of [his] safety." (DN 45, PageID.282; DN 47, PageID.320-21). Since the transfer to EKCC, Plaintiff states he has had "multiple issues with gang members and [has] requested protective custody 5 times in the last 24 months." (DN 45, PageID.282, 284).

Plaintiff acknowledges that upon being transferred, he "voiced his concern to staff concerning gang violence issues as well as past altercations with inmates housed at EKCC," thereby prompting an investigation into his potential conflicts. (DN 47, PageID.320-21). The affidavit of William Mullins, Unit Administrator at EKCC, likewise states that when Plaintiff arrived at EKCC on August 4, 2023, Plaintiff "immediately said he had conflicts on the yard at EKCC." (DN 46-1). Mullins consequently approved a dentition order to place Plaintiff into RHU "for his protection until his claim could be investigated." (*Id.*). That investigation revealed that Plaintiff had a previous physical altercation with Terry Harding at Roederer Assessment Center

but had subsequently completed a conflict resolution with Harding at WKCC. There was therefore no active conflict between the two inmates when Plaintiff arrived at EKCC. (*Id.*).

Additionally, correspondence dated September 15, 2023, from Ombudsman Allyson Lambert indicates that Plaintiff signed a conflict resolution form on June 28, 2022, as to Harding, on which he stated that "did not have any issue" with Harding. As of the date of Lambert's letter, Plaintiff did "not have any conflicts in the Department." (DN 45-4). The record therefore demonstrates that Plaintiff had no documented conflicts at EKCC at the time of his transfer, and that his placement in restricted housing was not a foreseeable, negative consequence of the transfer, but instead attributable to his self-reported security concerns.

Moreover, Plaintiff has not alleged, much less provided competent evidence, that his transfer from WKCC to EKCC deterred him from engaging in protected conduct. *See Siggers-El*, 412 F.3d at 702. To the contrary, the evidence establishes that Plaintiff continued to pursue his various complaints, including his stimulus check grievance, after his transfer had been effectuated. (DN 45-4). Accordingly, Plaintiff does not produce evidence sufficient to raise a genuine dispute as to whether his transfer resulted in foreseeable, negative consequences such that it constitutes an adverse action. *See Coates v. Kik*, No. 20-11101, 2023 WL 2978982, at *3 (E.D. Mich. Mar. 17, 2023), *report and recommendation adopted sub nom. Coates v. Castilla*, No. 20-CV-11101, 2023 WL 2973887 (E.D. Mich. Apr. 17, 2023) ("Because transfers without negative consequences are not deemed adverse action, the transfer here should not constitute the same."); *McKinney v. Paddock*, No. 2:20-CV-1450, 2022 WL 2790633, at *4 (S.D. Ohio July 15, 2022) ("As Plaintiff has not alleged any extraordinary circumstances arising from his transfer from LOCI to RCI, it cannot be found to constitute an adverse action.").

Even if Plaintiff could establish that his transfer was an adverse action for purposes of his retaliation claim, he cannot withstand summary judgment on the causation element, as discussed below.

*Causal Connection*

Defendants argue that "it is a temporal impossibility that [Plaintiff] was transferred in retaliation for his filing a grievance about his stimulus check," because the transfer determination was made on August 1, 2023, the day before he filed his grievance on August 2, 2023. (DN 42-1, PageID.180-182, 186).

Temporal proximity between the alleged adverse action and the protected conduct is relevant to the causation inquiry of a First Amendment claim, *i.e.*, "why allegedly-retaliatory action was taken." *Diederich v. Washington*, No. 19-CV-12799, 2025 WL 595148, at *4 (E.D. Mich. Feb. 24, 2025); *see also Bey v. Hissong*, No. 21-2883, 2022 WL 3969831, at *4 (6th Cir. Apr. 19, 2022) ("Although 'extremely close temporal proximity' between the protected activity and the adverse action can, in some 'rare[ ]' cases, 'permit an inference of retaliatory motive, . . . often evidence in addition to temporal proximity is required to permit the inference.'") (quoting *Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 401 (6th Cir. 2010)).

Presumably to establish a plausible temporal proximity between his protected conduct and his transfer, Plaintiff submits his sworn affidavit which states that he complained to Sparks on the morning of August 1, 2023—the day before he filed his grievance. Plaintiff states that, at that time, the two had a "heated debate" regarding the stimulus check withholding, and that he advised Sparks that he "was going to write a grievance on the issue." (DN 45, PageID.281). Defendants do not address Plaintiff's assertions in their reply. (DN 46).

Assuming that Plaintiff's contrasting timeline of events is sufficient to create a dispute of fact, *see Byrne v. United States*, 498 F. App'x 555, 563 (6th Cir. 2012), and that his verbal complaints to Grimes constitute protected conduct, *see Maben v. Thelen*, 887 F.3d at 265, it remains that "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). The Sixth Circuit has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill*, 630 F.3d at 476; *Mustin v. Wainwright*, No. 23-3671, 2024 WL 3950810, at *8 (6th Cir. Aug. 27, 2024) ("close temporal proximity between the protected activity and the adverse action can generate circumstantial evidence of a retaliatory motive, but this Circuit has been reluctant to rely on temporal proximity alone.").

In this regard, Plaintiff seeks to establish retaliatory motive by pointing to a conversation with Defendant Grimes on August 2, 2023, when he filed his grievance regarding the stimulus check withholding. At that time, Grimes allegedly tried to deter Plaintiff from filing a grievance, stating, "there's worse places you can end up than Western I can promise you that." (DN 45, PageID.283).

The undisputed record shows that Plaintiff's transfer had already progressed through two levels of approval at the time of Grimes' comments. And, more importantly, Defendants submit evidence that Grimes was not involved in the decision to transfer Plaintiff nor the processing thereof. (DN 42-11). As Plaintiff does not controvert this fact, Grimes' statements cannot serve to establish a causal connection between his grievance and transfer. *See Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001) (concluding that prison official's comments about transfer establish causation because it was uncontroverted that the official was not the decisionmaker).

17

As to the decisionmaker in this case, Hatton's affidavit states that she made the determination to transfer Plaintiff to EKCC, and that she had no knowledge of Plaintiff's grievance beforehand. (DN 42-7). Plaintiff offers no evidence to refute Hatton's sworn affidavit stating that she had no knowledge of the grievance, and therefore he cannot establish the grievance was a motivating factor in Hatton's decision to transfer Plaintiff. *See Alexander v. Ojala*, No. 17-2357, 2018 WL 5905588, at *4 (6th Cir. May 29, 2018) ("Ojala also averred that he has no knowledge or recollection of the grievance that Alexander allegedly filed against him and which forms the basis of Alexander's retaliation claim. Alexander offers no evidence to refute this testimony. Alexander's unsupported allegations are insufficient under *Thaddeus-X* to establish that his protected activity of filing a grievance was the motivating factor for Ojala's act of tasing him."); *Adkins v. Lewis*, No. 4:18CV-P24-JHM, 2020 WL 5809997, at *13 (W.D. Ky. Sept. 29, 2020) (granting summary judgment where plaintiff failed to demonstrate retaliatory motive).

Finally, although Plaintiff has not established a genuine dispute as to whether his grievance was a motivating factor in his transfer determination, the evidence of record also reveals that the Defendants would have taken the same action even in the absence of Plaintiff's protected activity. Where prison officials can show that the action would have occurred even if the plaintiff had not engaged in protected activity, there is an absence of "but for" causation and there is no valid claim of retaliation. *See Good v. Walworth*, No. 21-1429, 2023 WL 9320823, at *3 (6th Cir. Aug. 22, 2023), *cert. denied*, 144 S. Ct. 1071 (2024) (plaintiff has the initial burden to establish that there is a genuine issue of material fact over whether the plaintiff's protected expression was a motivating factor in the defendants' adverse action; if plaintiff does so, the defendants can rebut the plaintiff's claim by proving the absence of but-for causation) (citing *Lemaster v. Lawrence County*, 65 F.4th 302, 309—310 (6th Cir. 2023)).

The record contains an e-mail exchange between WKCC and EKCC staff, which shows that on August 1, 2023, a prisoner "swap" between the two facilities was proposed for Friday, August 4, 2024. (DN 42-2). Plaintiff's name appeared on a list of potential transferees from each facility. (*Id.*). Hatton attests that she made the determination to transfer Plaintiff the day before, on July 31, 2023, during a meeting regarding inmates currently held in WKCC's segregation unit. Plaintiff was scheduled to be released from segregation that day, however he had demonstrated an inability to adjust to the general population at WKCC. Hatton states that her decision was based on finding Plaintiff an appropriate placement and to facilitate the population flow among institutions. (DN 42-7). Hatton and Butts both attest that Plaintiff would be sent to "an institution with cells instead of open dorms," as Plaintiff demonstrated that he "could not cope with open dorms." (DNs 42-7 and 42-10). Hatton and Butts also note that Plaintiff did not have an inmate job, nor did he participate in any programming at WKCC. (*Id.*). Hatton states that Plaintiff previously told her that "he had trouble being in an open dorm and did not feel secure with so many other inmates being around him." (DN 42-7).

As Plaintiff does not rebut Defendants' non-retaliatory basis for the transfer determination, there is no genuine dispute as to whether he was transferred to EKCC for a legitimate, non-retaliatory reason. *See Cooper v. Bower*, No. 5:15-CV-249-TBR, 2017 WL 4682725, at *4 (W.D. Ky. Oct. 17, 2017) (granting summary judgment where Defendants carried their burden of showing that, absent any retaliatory intentions, the plaintiff would have been transferred anyway).

Viewing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences, Plaintiff has failed to produce evidence from which a jury could reasonably determine that his transfer to EKCC was in retaliation for his protected conduct. Having found that Defendants are entitled to summary judgment on this basis, the Court need not address their remaining

arguments. Accordingly, Defendants' motion for summary judgment on Plaintiff's First Amendment retaliation claim is granted.

## V.

For the reasons set forth above, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment (DN 42) is **GRANTED**. The Court will enter a separate Judgment dismissing the action.

Date:  June 17, 2025

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:     Plaintiff, *pro se*
        Counsel of record
4414.015